**SO ORDERED.**

**SIGNED this 04 day of May, 2010.**



_____
**ROBERT E. NUGENT**
**UNITED STATES CHIEF BANKRUPTCY JUDGE**

_____

OPINION DESIGNATED FOR ON - LINE PUBLICATION
BUT NOT PRINT PUBLICATION

### IN THE UNITED STATES BANKRUPTCY COURT
### FOR THE DISTRICT OF KANSAS

| | | |
|---|---|---|
| IN RE: | ) | |
| | ) | |
| CARL G. SHEEL, | ) | Case No. 09-12725 |
| | ) | Chapter 13 |
| Debtor. | ) | |

### MEMORANDUM OPINION

Debtor Carl G. Sheel filed a chapter 13 petition on August 25, 2009. The Trustee objects to his proposed chapter 13 plan.[1] The Court heard evidence on this issue on March 16, 2010 and is now prepared to rule.[2]

---

[1] Dkt. 15 and 4. Debtor appeared by his attorney David J. Lund and the chapter 13 trustee Laurie B. Williams appeared in person.

[2] The Court has jurisdiction over this proceeding. 28 U.S.C. § 1334. Confirmation of a chapter 13 plan is a core proceeding. 28 U.S.C. § 157 (b)(2)(L).

1

The Trustee objected to confirmation and alleged that the debtor was not paying all of his disposable income to his unsecured creditors as required by § 1325(b)(1)(B)[3] and that the debtor's plan did not meet the liquidation test set out in § 1325(a)(4) because the debtor may have fraudulently transferred a boat to his sister during the state law look-back period. The Court concludes that, based on the financial information in evidence, the debtor has failed to commit all of his disposable income to the plan and sustains that part of the Trustee's objection.

Facts

A. Projected Disposable Income

Carl Sheel sells health insurance to the elderly. Before he filed this case, he owned his own agency in Moline, Kansas. He sold that in 2004. He then worked as a salesman for AFLAC and later for M&M Insurance. M&M paid him a salary and AFLAC continues to pay him residual commissions. Sometime after 2008, he began selling for Senior Healthcare Consultants on commission.

When Mr. Sheel filed this case, his Form B22C reflected average monthly income for the preceding 6 months at $1,971.[4] It also reported average monthly residuals from AFLAC of approximately $129 for a total current monthly income (CMI) of $2,100. Based on this income level, Sheel is a below-median debtor and his disposable income will be determined by referring to his actual income and expenses as reported on Schedules I and J or based on other evidence that

---

[3] All statutory references are to the Bankruptcy Code, 11 U.S.C. § 101, et seq. unless otherwise provided.

[4] This income is reported on Line 4a as "Rent and other Real Property Income." As Sheel's Schedule A reflected that he owns no real property, this is likely in error.

2

accurately reflects on or adjusts Mr. Sheel's future income prospects.[5] Those schedules support a monthly disposable income amount of $125[6] and, because Sheel's income is below the median, his commitment period need not exceed 36 months.[7] The Trustee takes issue with the accuracy of these amounts and the Court's review of Mr. Sheel's Statement of Financial Affairs (SFA) and tax returns for the years 2007 and 2008 and 1099 income reports for 2009 corroborates her concerns.

Mr. Sheel's SFA reported that he received wages as well as other business income in 2007 and 2008.[8] For 2009, the SFA reports the receipt of wages of $11,826 for the partial year up to August 25, 2009, the date of his petition. He also reported income from his father's trust in 2007. He offered his 2007 and 2008 tax returns in evidence along with two 1099 forms he received concerning payments to him by AFLAC and his current employer in 2009. As of the hearing date, he had not yet filed his 2009 return.

According to Mr. Sheel's 2007 return, he received wages of $30,858 from M&M Financial Services and business income of $2,902.[9] He also received $58,452 in trust distributions from the

---

[5] § 1325(b)(1)(B), (b)(2), and (b)(3). *See Hamilton v. Lanning (In re Lanning)*, 545 F.3d 1269, 1282 (10th Cir. 2008), *cert. granted*, 2009 LEXIS 7655 (U.S., Nov. 2, 2009) (Form B22C is the starting point for calculating disposable income; where current monthly income as reported on Form B22C differs substantially from debtor's actual income at confirmation, the Court may look to Schedule I to determine the income side of disposable income looking forward.); *In re Kibbe,* 361 B.R. 302, 314-15 (1st Cir. BAP 2007); *In re Daniel*, 359 B.R. 320, 326-27 (Bankr. D. Kan. 2006) (A below-median income debtor's amounts "reasonably necessary to be expended" for the maintenance or support of debtor or debtor's dependents are determined from expenses shown on Schedule J.).

[6] Ex. F.

[7] § 1325(b)(4).

[8] Ex. E.

[9] Ex. 1.

3

estate of his late father. That trust is now completely administered and this is the only money Sheel received from it. Among other deductions from his wages, Sheel claimed Form 2106 unreimbursed employee business expense of $2,346. Sheel's actual Form 2106 reflects that all of this expense was vehicle expense. In addition, he claimed $782 in car and truck expense (mileage) on Schedule C (Profit or Loss from Business).

Sheel's 2008 return reflected salary income of $22,226 and business loss of ($7,906).[10] He claimed no Form 2106 expense in 2008, but his Schedule C reflected $13,483 in car and truck expense. No other evidence in the record explained why this was so high in comparison to the prior year. All of Sheel's withholding of $2,527 was refunded in 2008.

Sheel did not present his 2009 return, but did offer two 1099 forms into evidence. One is from RJR Insurance Services and reports payments to Sheel of $27,522.[11] The other is from AFLAC and reflects commissions of $1,499.[12] Without his 2009 return, the Court cannot determine how much, if any, expenses Sheel will claim on his Schedule C or Form 1040 return. Annualizing the amounts shown on the Form 1099s, the Court concludes that Sheel's gross business income averages $2,418 per month, before taxes and other expenses. As noted above, Mr. Sheel's Form B22C reports current monthly income of $2,100. As current monthly income is the average of the debtor's preceding six months' income, the Court finds that Mr. Sheel received approximately $12,600 from February through July, 2009.[13] Because his Form 1099s report income of $29,021 for calendar year

---

[10] Ex. 2.

[11] Ex. 4.

[12] Ex. 3.

[13] This amount slightly exceeds the partial-year "wage" figure of $11,826 reported on Sheel's SFA. The difference is explained by the inclusion of the AFLAC residual commission in

4

2009, the Court finds that he received $16,421 for the months of January and August through December of 2009. This suggests that Mr. Sheel's post-filing income has increased significantly.

On Mr. Sheel's Schedule J, he claims transportation expenses of $300. Yet on his 2007 and 2008 tax returns, he claims considerably different expenses in connection with transportation. The Court cannot reconcile this anticipated $3,600 expenditure with the $3,128 he claimed on Form 2106 and Schedule C in 2007. Nor can the Court fathom the sudden increase in expenses in 2008 to $13,483 or $1,124 per month. The Court has no basis on which to conclude whether these transportation expenses increase with his income, or, if they do, in what proportion. Further, Mr. Sheel claims tax expense on Schedule J of $30 per month for property taxes. There is no mention of income tax, whether for the payment of estimated taxes, self-employment taxes, or withholding. The Court does note that all of Mr. Sheels' 2008 withholding was refunded, suggesting that Mr. Sheel anticipates paying no tax for 2009.

The Court notes Mr. Sheel's testimony that he currently resides with his girlfriend who owns the home they inhabit and pays most of the household expenses including the mortgage payment, thus freeing up more disposable income for Mr. Sheel. In addition, he scheduled no secured debt or priority claims.

B. <u>Pre-petition Transfers</u>

Part of the Trustee's objection to confirmation is grounded on her claim that the debtor made several pre-petition transfers of property that could be recovered under state law and considered in

---

the CMI figure on Form B22C, but not in the "wages" figure reported on the SFA, as well as the time period encompassed by the two figures. The SFA covers the period January-August of 2009, up to the date of the petition was filed. Form B22C covers the narrower six-month period preceding filing of February-July, 2009.

5

applying the liquidation test in § 1325(a)(4) to this plan. Her objection involves the debtor's transfer of a Cobalt boat that he acquired in 2004 with a $30,000 loan from Commerce Bank. Sheel was married to Lois Sheel at that time. When they divorced in 2006 in Texas, Lois took the boat. When she did not make the loan payments, Commerce Bank repossessed the boat. Sheel redeemed the boat for cash and Commerce Bank released its lien. He redeemed the boat with cash he received from the sale of his insurance firm in Moline in 2004. Sheel testified that he gave the boat to his sister in 2006 as payment for advances he had received from his father that diminished the sister's share in their father's estate. He stated that he owed her $24,000.[14] He last saw the boat on a trailer at her home in Fort Worth in 2007.

An arbitrator was appointed to apportion the marital property. Under the arbitral award, Sheel received a fifth-wheel trailer. He sold the trailer to an individual for $28,000 and plowed that money into living expenses. In 2007, Sheel received the $58,452 payout from his father's trust. He cashed the check, retained some of the cash and deposited the rest in a bank account. He bought a truck for $20,000, a ring for his girlfriend, and took a trip to Mexico. He could not say how much he spent on the ring or the trip. He insists that the money is gone.[15]

Analysis

A.  Disposable Income Objection

As a below-median debtor, Mr. Sheel is only required to commit his disposable income to

---

[14] At trial, Sheel presented no written record of these advances or the amount owing to his sister. Neither Sheel's sister or his ex-wife testified at the March 16 evidentiary hearing.

[15] No bank records, or other documentary evidence, were introduced at trial showing any of these transactions or expenditures.

6

his plan for a period of 36 months.[16] The Court measures his disposable income by comparing his reported income to his expenses on Schedules I and J.[17] The Trustee questions the accuracy of those schedules, particularly with respect to income. As shown above, debtor's 2009 income appears to have increased after the petition was filed. Where he made less than $13,000 in the six months before August, 2009, he appears to have received over $16,000 in the months that are not accounted for on Form B22C. Mr. Sheel received about $29,091 for the year or an average of $2,418 per month. This exceeds by $317 the monthly disposable income he reported on Schedule J.[18] His reported expenses on his tax return do not match up with those he claims on Schedule J. As the Court is required to consider his actual income and expenses, the Court cannot agree that his disposable income is merely $125 per month. He can certainly pay more, at least on the record before the Court today. The debtor had the burden to prove by a preponderance of the evidence that he had committed all of his disposable income to the plan and he did not bear that burden.[19] The plan does not comply with § 1325(b)(1)(B) and (b)(2) and cannot be confirmed.

  B  <u>Transfers and Liquidation Test</u>

The Trustee suggests that the boat could conceivably be recovered as a state law fraudulent transfer under KAN. STAT. ANN. §§ 33-204 or 33-205. State law provides for a four-year statute

---

[16] § 1325(b)(4).

[17] *See* note 5, *supra.*

[18] Debtor calculates his monthly disposable income on Schedule J as $125. *See* Ex. F. But if the $2,418 income figure rather than $2,100 is used on Schedule I, debtor's monthly disposable income is $442 ($2,418 - $1,976 = $442).

[19] Keith M. Lundin & William H. Brown, CHAPTER 13 BANKRUPTCY, 4TH EDITION, § 163.1 at ¶ 6, Sec. Rev. June 14, 2004, www.Ch13online.com.

7

of limitations on such recovery actions.[20] This would arguably cover the boat's transfer in 2006. Neither the debtor nor the Trustee has commenced an action to recover the boat, but the Trustee asserts that the boat should be recovered and considered in the liquidation analysis. The Court is dubious of the Trustee's assertion.

Kansas adopted the Uniform Fraudulent Transfer Act (UFTA) in 1998.[21] Under the UFTA, certain transfers are avoidable as to present and future creditors while others are avoidable only as to current creditors. KAN. STAT. ANN. § 33-204(a)(1) avoids transfers made with actual intent to hinder, delay or defraud a creditor. The statute sets out 11 badges of fraud that may be used to evaluate such a claim.[22] KAN. STAT. ANN. § 33-204(a)(2) avoids a transfer that was made for less than reasonably equivalent value where the debtor was engaged in a transaction for which the debtor's assets were unreasonably small or intended to incur debts beyond the debtor's ability to pay. Either of such transactions may be avoided by current and future creditors. KAN. STAT. ANN. § 33-205(a) avoids transfers made for less than reasonably equivalent value while the debtor is insolvent. KAN. STAT. ANN. § 33-205(b) avoids transfers that are made to an insider for an antecedent debt where the debtor is insolvent and the insider had reason to know that. The Trustee did not specify which of these species of avoidance she would pursue.

There is no evidence of Sheel's intention to hinder, delay or defraud anyone. It appears that a boat that cost $30,000 in 2003 was transferred in 2006 as payment of a $24,000 debt. This strikes

---

[20] KAN. STAT. ANN. § 33-209.

[21] KAN. STAT. ANN. § 33-201 *et seq.* (2000). The UFTA became effective January 1, 1999. *See McCain Foods USA, Inc. v. Central Processors, Inc.,* 275 Kan. 1, 61 P.3d 68 (2002).

[22] KAN. STAT. ANN. § 33-204(b).

8

Case 09-12725    Doc# 25    Filed 05/04/10    Page 8 of 10

the Court as reasonably equivalent value in the absence of any evidence to the contrary.[23] In short, without a more fully-developed record, the Court cannot conclude that the boat will become part of the estate any time soon or that its value must be returned to the creditors under this plan.

The Court heard no evidence suggesting that the sale of the fifth-wheel trailer or the expenditure of the trust proceeds constituted fraudulent transfers. While such evidence could be ferreted out in discovery on adversary proceedings yet to be filed, nothing in today's record would lend support to the debtor's sale of the trailer and expenditure of the proceeds being in the nature of a fraudulent transfer of any variety. Likewise, the debtor's spending his father's legacy may have been improvident and ill-advised, but it cannot be said to be fraudulent in the absence of evidence of other circumstances.

C. Conclusion and Order

Because the debtor has failed in his burden to prove that he has committed all of his disposable income to payment of his unsecured creditors under this plan as required by § 1325(b)(1)(B), confirmation must be DENIED. For the reasons set forth above, the Trustee's liquidation objection is OVERRULED at this time. Debtor is granted 45 days to amend his chapter 13 plan or the case will be dismissed. In so ordering, the Court intends that the debtor file his 2009

---

[23] *See In re Solomon* 299 B.R. 626, 633-34 (10th Cir.B.A.P. 2003) (Courts compare the value of the transfer the debtor made to the value the debtor received in exchange or the amount of the antecedent debt; no per se rule for determining reasonably equivalent value under § 548(a)(1)). *Morganroth & Morganroth v. DeLorean*, 213 F.3d 1301 (10th Cir. 2000) (Real property having a value of at least $1.2 million transferred for unsecured note with face amount of $1.2 million was reasonably equivalent value); *In re WCC Holding Corp.,* 171 B.R. 972 (Bankr. N.D. Tex. 1994) (applying the Texas UFTA, reasonably equivalent value does not require exact mathematical equivalence). *But see In re Independent Clearing House Co.,* 77 B.R. 843 (D. Utah 1987) (Under § 548(a)(1), transfers in excess of an undertaking are not reasonably equivalent; debtor did not receive reasonably equivalent value to extent defendant received more than he advanced to the debtors).

9

tax return not later than April 15, 2010 so that the parties may accurately determine his actual 2009 income and expenses. A copy of that return should be provided to the Trustee upon filing.

# # #